**CITY OF DALLAS et al. v. HOSKINS.**

No. 13660.

Court of Civil Appeals of Texas. Dallas.

Feb. 8, 1946.

Rehearing Denied March 15, 1946.

H. P. Kucera, City Atty., and A. J. Thuss, Jr., E. L. Markham, Jr., and R. L. Dillard, Jr., Asst. City Attys., all of Dallas, for appellant.

DeShazo & Hyde, of Dallas, for appellee.

LOONEY, Justice.

Jess Hoskins (appellee), beginning in September 1919, served the City of Dallas in two capacities: First as policeman for several years, and later as fireman for over 17 years, altogether more than 20 years; and, having complied with the provisions of the statute providing pensions for firemen and policemen in cities of the class of Dallas, was in all respects eligible to participate in a Firemen's Pension Fund created under Art. 6243a Vernon's Ann.Rev. Civ.St.

On February 8, 1942, while in line of duty as fireman, Hoskins sustained a severe injury to his back that disabled him from further performing the duties of fireman. After receiving the injury, he was inactive for about 60 days, but later returned to his job and stayed until the Chief of the Fire Department requested him to apply to the Board of Trustees of the Firemen, Policemen and Fire Alarm Operators'

Pension Fund of the City for permanent disability compensation under the provisions of the statute above mentioned. Mr. Hoskins complied with this request, and after being examined by physicians selected by the Board, it was ascertained that he had become so disabled by reason of the injury as to be incapacitated to further perform the duties of a fireman; therefore, as mandatorily required by statute, he was retired from the service, and became entitled to and was awarded a monthly pension of $80.40, same being one-half the current base pay of a private in the fire department.

The proceedings just detailed were in accordance with and authorized by the provisions of sec. 9, Art. 6243a, R.C.S., relating to pensions for firemen and policemen in the City of Dallas, reading as follows: "Sec. 9. When any member of the Fire Department, Police Department, and Fire Alarm Operators' Department of the city or town, and who is contributing to said Fund, as herein provided, shall become so permanently disabled through injury or disease contracted in the line of duty as to incapacitate him from the performance of his duties, and shall make written application subject to medical examination for such injuries or disease, he shall be retired from the service and be entitled to receive from the said Fund one-half (1/2) of the base pay of a private per month, plus one-half (1/2) of the service money granted to the member under the provisions of any City Charter; which base pay of a private shall be computed on the basis of the current payroll. * * *"

Appellee was paid the pension granted for only a few months when, on September 1, 1943, he was called before the Board for a hearing in regard to the matter which resulted in the Board's reducing his pension from one-half, as originally granted, to one-fourth of the base pay of a private, and this without a medical or physical examination to determine the degree of his disability as the statute required, since which time he has been paid only one-half the amount previously received. The only authority given the Board of Trustees either to increase, decrease, or discontinue, the relief being paid a pensioner, is found in the provision of Art. 6243a, near the conclusion of sec. 1, in this general language, to-wit: "The Board shall have the power and authority, by a majority vote, to reduce the percentages stipulated in any

Section or Subsection of this Act which deals with disabilities or with awards granted to beneficiaries. The reduction shall be based upon the degrees of disability and circumstances surrounding the case. The Board shall have the complete authority and power to administer all of the provisions of this Act and any implied powers under this Act," and in sec. 13 of said Article, a more specific provision as follows: "Sec. 13. Said Board may cause any person receiving any pension under the provisions of this Act, who has served less than twenty (20) years, to appear and undergo medical examination by either the Health Director or some reputable physician selected by the Board; as a result of which the Board shall determine whether the relief in said case shall be continued, increased, decreased, or discontinued. * *"

After several ineffectual applications to the Board praying that he be restored to his former status as pensioner, appellee instituted this suit against the City of Dallas and the Board of Trustees of the Pension Fund of said City to recover the amount by which the pension, as originally approved and granted, had been reduced during the months since September 1, 1943, to the date of trial of this cause.

The case was submitted to the court without a jury and after a hearing the court held, in response to pleadings, that the City of Dallas was an improper party, hence adjudged that appellee take nothing as against the City; but rendered judgment in his favor against the Board and its constituent trustees, as such, for the sum of $874.95 with interest from May 7, 1945, and all costs of suit, holding that as a matter of law the Board of Trustees of the Firemen, Policemen and Fire Alarm Operators' Pension Fund of the City of Dallas had no authority to reduce appellee's pension as originally based upon one-half the base pay of a private fireman. To this judgment the appellant Board of Trustees excepted, gave notice of and perfected this appeal.

Appellant's pivotal contention is presented in its point of error No. 1, as follows: "This case should be reversed, because the trial court erred in holding that the Board of Trustees of the Firemen, Policemen and Fire Alarm Operators Pension Fund of the City of Dallas had no right to reduce a fireman's disability pension granted under Article 6243a, Vernon's Ann.R.C.S., from one-half the base pay of a private in the

Fire Department to one-fourth the base pay of such private, although such reduction was based on the degree of the fireman's disability and the circumstances surrounding his case, as provided by said statute."

At the threshold of this discussion we quote an admission of record which we think settled this controversy adversely to the appellant; the admission is as follows: "The Pension Board admits that the plaintiff is now and has been since the date of his injury totally disabled from performing the duties of a fireman for the City of Dallas, and further admits that the injuries causing his disability were suffered in line of duty as a fireman for the City of Dallas."

In regard to the power of the Board of Trustees to reduce a pension, as we have seen, the statute provides that "the reduction shall be based upon the degree of disability and circumstances surrounding the case" (see latter part of sec. 1, Art. 6243a). It seems that the circumstances seized upon by the Board as justification for its act in reducing appellee's pension, were these: After appellee was retired and put upon half pay of a private, he accepted employment from the United States Government as a guard for the Army Air Force at a salary of $2,200 per annum, but from time to time during his service with the government was compelled to lay off on account of his physical condition, finally was forced to quit the service in January 1945, and at time of trial was not working at all.

The statute quoted above, in our opinion, simply means that in determining the degree of disability the Board of Trustees may take into consideration the circumstances surrounding the case—circumstances of value as evidence bearing upon the degree of disability existing at the time of the inquiry; for it is obvious that the existence of a disability is the fact that authorizes the grant of a pension in the first instance, and its degree determines the amount of the pension. No circumstance, other than one that sheds light upon that matter, would be relevant; hence we do not think that fortuitous circumstances connected with the life of the pensioner, such as the subsequent acquisition of property rendering him economically independent, or, as in this instance, the ability to earn money from employment such as his impaired physical condition would admit, could prop-

erly be considered by the Board in passing upon the degree of pensioner's disability. However, in the instant case whether or not the degree of appellee's disability had changed after the pension was granted, was not even debatable, in view of the stipulation of record which conclusively shows that since the pension was originally granted his disability and incapacity to perform the duties of fireman (which was the basis for the pension granted) underwent no change whatsoever; hence there existed no legal justification for the action of the Board in reducing the pension from one-half to one-fourth of the base pay of a private.

When appellee was injured in line of duty and rendered permanently disabled and incapacitated to perform the duties of fireman, which is admitted, he became entitled to receive from the pension fund each month one-half the base pay of a private; this by virtue of the contract between him and the City, as the Statute became a part of appellee's contract of employment as though actually incorporated therein. So appellee's rights fixed by the statute under the stipulation, were contractual, not a mere gift, grant or gratuity, and not subject to be disturbed or diminished by the Board of Trustees. See Bird v. City of Dallas, Tex.Com.App., 6 S.W.2d 738, and authorities cited therein; also the more recent case of City of Dallas v. Trammel, 129 Tex. 150, 101 S.W.2d 1009, 1011, 112 A.L.R. 997, in which among other things the court said: "The law pertaining to such employment is necessarily a part of the contract of employment and is read into the contract as fully as though it had been actually incorporated therein. Trinity, etc. Co. v. Lion, etc. Co., Tex.Com. App., 229 S.W. 483; United States Fidelity, etc. Co. v. Henderson County, Tex. Com.App., 276 S.W. 203: Id., Tex.Com. App. 276 S.W. 119. When an officer or employee coming within the statute is employed and evidences his assent to the pension scheme, he thereupon has a binding contract with his employer for the stipulated salary and likewise to be 'entitled to participate' in the fund upon the terms prescribed. The right to participate in such fund is therefore not a gratuity or donation in any sense. It is as much a part of the agreed compensation as is the monthly stipend."

Appellant seems to stress the fact, as an argument in support of the right or

the Board to reduce appellee's pension, that beginning in 1943 the pension fund was paying out more than it was receiving; was depleting its reserves. Of course a pension fund is being depleted at all times, but presumably is being augmented at all times, and is created for the purpose of being paid out. However, at the time of the trial the evidence shows that there was approximately $180,000 in the fund, and even if it had remained completely static it would not have been completely depleted for several years. We can find no justification whatsoever for the action of the Board in reducing appellee's pension, as he had a contract right to participate in the pension fund as long as there exists a pension fund. In City of Dallas v. Trammel, supra, the court used this pertinent language: "It is distinctly stated that an employee, occupying a situation such as is occupied by defendant in error, acquires by virtue of his contract with the city, and as an essential part thereof, 'the right to participate in' the pension fund. No one can question this, and for the purpose of this decision it may be conceded that this right to participate in the pension fund, so long as there is such a fund, is one which cannot be destroyed." Being of opinion that the Board exceeded its authority in reducing appellee's pension, appellant's point of error just considered is overruled.

In appellant's point of error No. 3 the complaint is that the judgment below is excessive and not warranted by evidence. This point, in our opinion, is well taken; the statute, sec. 9, Art. 6243a, provides that, under the circumstances mentioned therein, a fireman shall be retired and become entitled to receive from the pension fund each month one-half the base pay of a private in the fire department, "which base pay of a private shall be computed on the basis of the current payroll." The current pay roll at the time the pension was granted was $161.25 per month, one-fourth of which is $40.31. The elapsed time from the reduction of the pension (September 1, 1943) to date of the entry of judgment below (May 26, 1945) was 20 months and 26 days. Using that basis for calculation, we think the judgment should have been for $840.84 instead of $874.95. Although a short time after appellee's pension was reduced, the base pay of a private was increased to $171 per month, yet it was upon the base pay as it existed at the time appellee was retired that he was assessed and required to contribute to the pension fund, and we think that the proper basis to be used in ascertaining his loss by reason of the reduction of the pension.

The judgment is reformed and, as reformed, is affirmed for $840.84 with interest at the rate of 6 per cent from date of judgment and all costs incurred in this court and in the court below, for the collection of which all necessary and adequate process may issue.

Reformed and affirmed.